LEE, P.J.,
for the Court.
¶ 1. Hillside Terrace, L.P., (Hillside) by and through its general partner Hillside Terrace I, LLC, appeals a decision of the Harrison County Circuit Court, which affirmed the decision of the Gulfport City Council (City Council). The City Council affirmed the decision of the Gulfport Planning Commission (Commission), which denied Hillside’s application for approval to construct a 96-unit multi-family dwelling on 6.06 acres in Gulfport, Mississippi. Hillside appeals and asserts that the circuit court erred in affirming the City Council which affirmed the Commission’s decision because: (1) the Commission exceeded the scope of its authority in denying the application; (2) the denial of the application constitutes a taking of Hillside’s property; and (3) the Commission acted in an arbitrary and capricious manner, as its decision is not supported by substantial evidence. Finding no reversible error, we affirm.
FACTS
¶ 2. In December 2006, Hillside filed an application with the Commission, seeking approval to construct a multi-family housing development utilizing low-income housing tax credits. Hillside requested permission to build the development on land that it owns, which is situated along Pass Road within the city limits of Gulfport. The proposed location is adjacent to a gift shop owned by Martin and Dorothy Miazza and an existing apartment complex.[1] The land is situated within a B-2 district, which is designated as a general business district pursuant to Gulfport’s Comprehensive Zoning Ordinance.[2] As a result, approval must be obtained from the Commission before the land may be used for residential purposes.
¶ 3. The planning staff issued a staff report that recommended approval of Hillside’s application, with the following conditions: (1) “[a] Planned Building Group will be required for this development if there are going to be multiply [sic] building[s] that are not connected,” and (2) “[t]here is [an] AE flood zone located on the northern portion of the propose[d] development. If this area is going to be used in the development, the applicant will need to schedule a meeting with the Flood Plain Administrator to discuss possible changes in the required BFE (base flood elevation).” The Commission held a public hearing on January 11, 2007, and despite the planning staffs recommendation, voted to deny Hill *342 side’s application. Then, Hillside appealed to the City Council, which affirmed the Commission’s decision during its March 20th meeting. On March 29, 2007, Hillside filed a notice of appeal to the Harrison County Circuit Court, which affirmed the City Council’s decision.[3] It is from this decision that Hillside now appeals.
¶ 4. Additional facts, as necessary, will be related during our analysis and discussion of the issues.
ANALYSIS AND DISCUSSION OF THE ISSUES
¶ 5. In Town of Prentiss v. Jefferson Davis County, 874 So.2d 962, 964(¶ 6) (Miss.2004) (citing Hooks v. George County, 748 So.2d 678, 680 (Miss.1999)), the Mississippi Supreme Court held that “[u]n-like decisions to zone or re-zone, which are legislative in nature, decisions on request for special exceptions are adjudicative, and a reviewing court subjects such decisions to the same standard as is applied to administrative agency adjudicative decisions.” Therefore, the “decision of an administrative agency is not to be disturbed unless the agency order was unsupported by substantial evidence; was arbitrary or capricious; was beyond the agency’s scope or powers; or violated the constitutional or statutory rights of the aggrieved party.” Id.
¶ 6. Hillside argues that the circuit court erred in affirming the decision of the City Council because the Commission, in denying Hillside’s application, went beyond the scope of its power in two respects. First, Hillside asserts that the Commission’s “decision was based mostly on expected drainage issues and was not based on the criteria called for in the City’s Comprehensive Land Use Ordinances.” Hillside points us to appendix A, section III(J)(l)(b) of the land-use ordinances, which reads as follows:
Uses requiring planning approval. The uses listed below are permitted upon approval of location and the site plan thereof by the planning commission as being appropriate with regard to transportation and access, water supply, waste disposal, and other public facilities, as not causing undue traffic congestion or creating a traffic hazard, and as being in harmony with the orderly and appropriate development of the district [in] which the use is located.
Hillside asserts that “[njoticeably absent from the ordinance is any power granted to the Planning Commission to base its decision to deny the use of any property on technical engineering concerns such as drainage.” Thus, according to Hillside, the Commission exceeded the scope of its power when it allowed the drainage issue to become a factor in its decision to deny Hillside’s application.
¶ 7. It is undisputed that a portion of the tract of land encompassing the building site is located in a flood zone, although not in a HUD designated flood zone. During the hearing before the Commission, Hillside’s engineer testified that, although the project would likely experience technical issues later in the process, drainage issues would be addressed and resolved as the process moved forward.
¶ 8. John Boyd, vice-president of Realtex Development Corporation (Realtex), the company involved in constructing the development, testified that they sought a use approval, rather than a rezoning, to provide affordable quality apartments for low-income families. Boyd explained that this *343 development would replace apartment complexes that were destroyed by Hurricane Katrina. He acknowledged that they must address the drainage issues and assured the Commission that Realtex would comply with the Federal Emergency Management Agency’s (FEMA) advisory base flood elevations. Boyd also stated that Realtex would conduct a drainage study. As for the affordability aspect of the multifamily development, Boyd stated that the residents must have a verifiable income of at least two and a half times the rent.
¶ 9. David Crane, attorney for the Miaz-zas, was also present at the hearing and spoke against the Commission’s approval. He stated that the Miazzas’ objections were based on the following reasons: (1) there is currently an apartment complex to the left of their gift shop; (2) an additional multi-family development will bring increased traffic; and (3) the water supply and fire and police protection will need to be increased. Also, Crane noted that traffic along Pass Road is already congested, as there is a school across the street from their business, an apartment complex adjacent to their building, and a grocery store in close proximity to their building. Further, according to Crane, the Miazzas believe that the proposed project will engender “an atmosphere for the cultivation of crime.”
¶ 10. Hillside argues that the Commission should not have considered the drainage issue because the Commission lacks the expertise and technical training necessary to do so. In Board of Aldermen of Town of Bay Springs v. Jenkins, 423 So.2d 1323, 1327 (Miss.1982), our supreme court held that it was proper for the Mayor and the Board of Aldermen to “call upon their own common knowledge and experience” and to consider statements from landowners in rendering a municipal order. The Jenkins court found that:
It is manifest that the Mayor and Board took into consideration all statements, both sworn and unsworn, and their common knowledge and familiarity about their small municipality, in reaching their decision. We believe this method to be sound and practical, and courts should respect such findings unless they are arbitrary, capricious, and unreasonable.
Id. at 1327-28.
¶ 11. Commission member Claudia Keyes testified during the hearing that the Commission had denied a proposed project on this particular land two years prior because of flooding. Further, Keyes noted that Brickyard Bayou is located behind the property. Also, Commission member Lu-tillie Stepney testified that he is familiar with the property and stated unequivocally that the property “is going to flood.”
¶ 12. Based on the holding in Jenkins, we conclude that the Commission did not exceed the scope of its authority when it considered the drainage issue.
¶ 13. As for Hillside’s contention that the Commission’s decision is based mostly on drainage, we note that the record clearly reflects that the Commission considered several factors, in addition to drainage. This is evidenced by the following comments made by Crane during the hearing:
Now, he said they’re simply asking for use approval. Your zoning ordinance allows for multi[-]family development in a B-2 zone only if — if and only if the planning commission gives use approval or there might be an exception, they might say it’s allowed here. If you look back in the transcript of this matter, there was a discussion of a hundred plus multi-family units already located almost immediately adjacent to the property. I don’t know if any of you are familiar *344 with the location of my client’s property, Martin Miazza’s Fine Gifts. They are on the corner of Pass Road where 29th Avenue intersects Pass Road. That intersection is not a perpendicular intersection. It’s a very steep angle. And it’s actually kind of dangerous to drive in and out of there because in order to get out of the parking lot of Martin Miaz-za’s, you’ve got to get on 29th then on Pass Road immediately. Immediately to the east of — west of the Miazzas’ property is one residence, and then there’s a driveway for the (inaudible) multi-family complex. It goes behind the Miazza property and comes back, and it abuts the property in question. It’s clearly over 100 multi-families. It is partially vacant. It is for the most part vacant right now, as it did, indeed, flood during Katrina. Now, this is how our appeal is based on speculation that the sole reason of the planning commission’s denial was for drainage and flooding. Now, I’m not going to concede that that goes beyond the planning commission’s purview. However, there are certain factors in considering a special use request like this that they’ve got to consider. Transportation and access, traffic congestion and hazards, harmony with the orderly and appropriate development of the district, fire protection, and also any other public facilities that will be tasked. So I would suggest to you that drainage is certainly an issue that would task public facilities if, in the event that a plan was accomplished and built there, they caused drainage problems.
Thus, because the Commission considered potential problems with traffic congestion, police and fire protection, and crime, we cannot conclude that the Commission’s decision to deny Hillside’s application was “arbitrary, capricious, discriminatory, illegal, or without a substantial evidentiary basis.” Accordingly, we find no merit to this issue.
¶ 14. Second, Hillside asserts that the Commission exceeded its authority in inquiring, during the hearing, about the financial viability of the project, exploring its method of financing the project, and its rental-rate structure. Specifically, Hillside argues that its involvement with Realtex and the Mississippi Regional Housing Authority VIII (MRHA) coupled with the fact that the project would be financed using low-income tax credits “played a significant role in the Planning Commission’s denial.” Hillside contends that the discussion centered around who would be tenants.
¶ 15. Our review of the record reveals that the Commission considered testimony regarding the income requirements of the applicants, along with issues such as the likelihood of an increase in crime and the need for increased fire and police protection. However, there is nothing in the record which suggests that the Commission gave undue consideration to the fact that the project was to be financed using low-income tax credits. Thus, we conclude that the Commission properly considered all of the issues concerning Hillside’s project. This issue lacks merit.
¶ 16. Third, Hillside asserts that the Commission’s denial constitutes a taking of its property and directs our attention to Tippitt v. City of Hernando, 909 So.2d 1190, 1194(¶ 4) (Miss.Ct.App.2005) (quoting Walters v. City of Greenville, 751 So.2d 1206, 1210(¶ 19) (Miss.Ct.App.1999)) which defines a taking as follows:
There is a taking of property when government action directly interferes with or substantially disturbs the owner’s use and enjoyment of the property. Brothers v. U.S., 594 F.2d 740, 741-42 (1979). A taking is effected if the application of *345 a zoning law denies a property owner of economically viable use of his land. This can consist of preventing the best use of the land or extinguishing a fundamental attribute of ownership. Vari-Build, Inc. v. City of Reno, 596 F.Supp. 673, 679 (1984).
¶ 17. According to Hillside, the Commission would refuse to approve any use of the property and points to the Commission’s denial on a prior occasion to support its contention. Keyes stated the following at the commission meeting:
[ T]his very property has been before us as recent as two years ago. And we denied it. And you know why we denied it? Because it floods. Brickyard Bayou is right behind that. So we denied it for I believe it was like a campground just so recently as two years ago. So I can’t really see, you know, houses that can’t go on wheels moving out of there, so, you know, I wouldn’t think that this would be the place that you’re really looking for.
We note that one of the owners of the property testified at the City Council meeting and vigorously denied Keyes’s claim that an application had been denied two years prior. Nevertheless, Hillside now argues that the Commission did just that. Further, Hillside does not point to anything in the record to support its argument that the Commission would not approve the property for any of the permitted uses that required the Commission’s approval. As evidenced by Keyes’s comments quoted above, the opposite is true. She intimated that other projects would likely be approved for this property, e.g., mobile homes. Therefore, we find no merit to this issue, as Hillside has failed to prove that it was denied “economically viable use of its land.”
¶ 18. Finally, Hillside asserts that the Commission’s decision was arbitrary and capricious and not supported by substantial evidence. Hillside contends, again, that the Commission based its decision on “past drainage issues without reviewing or offering evidence to support its finding of infeasibility.” We disagree. The engineer for the project, Craig Carney, testified at the City Council meeting and explained the measures that would be undertaken in order to prevent any potential drainage issues and to ensure that the property does not flood. Further, as stated, two Commission members testified that the property is highly likely to flood. Specifically, Stepney stated the following:
This property here, I’ve been across it since back in the sixties. And I’m telling you, it’s going to flood. Just the other week, the rain we did have, it had about eight or ten (inaudible). This property here, like she just told you, we had this before, I know because the property just down below, the school where my wife works, and when it rains, you can’t stop it.
Obviously, the Commission was not convinced that the development will not flood or will not have other drainage issues in the future. We cannot find the circuit court in error for affirming the City Council which affirmed the Commission’s decision to deny Hillside’s application. There is no merit to this issue.
¶ 19. THE JUDGMENT OF THE HARRISON COUNTY CIRCUIT COURT IS AFFIRMED. ALL COSTS OF THIS APPEAL ARE ASSESSED TO THE APPELLANT.
GRIFFIS, BARNES AND ROBERTS, JJ., CONCUR. IRVING, J„ DISSENTS WITH SEPARATE WRITTEN OPINION JOINED BY KING, C.J., MYERS, P.J., AND CARLTON, J. ISHEE AND MAXWELL, JJ., NOT PARTICIPATING.

. The Miazzas appeared before the Commission and objected to the approval of Hillside’s application.

. According to the zoning ordinance, B-2 districts are general business districts that are:
composed of land and structures occupied by or suitable for uses furnishing, in addition to the retail goods and services supplied by the neighborhood business districts, the wider range of retail goods and services required by residents of a group or community of neighborhoods, and by the city generally. Usually located on a thoroughfare or highway or near the intersec-lion of principal thoroughfares or highways, these districts are large and within convenient distance of the area they serve. The district regulations are designed to permit the development of the districts for their purpose in a spacious arrangement of uses and structures. To protect the abutting and surrounding residential areas, certain requirements are placed on uses. It is intended that additional general business districts will be created, in accordance with the amendment procedure of this ordinance, as they are needed to serve groups of new neighborhoods or the city generally.

. The Miazzas filed a motion to intervene in this matter on August 23, 2007. Thereafter, the Harrison County Circuit Court issued an agreed order, and the Miazzas were allowed to participate as advocates for the City from that point forward.