# IN THE SUPREME COURT OF MISSISSIPPI

## NO. 2010-CT-00274-SCT

*ROUNDSTONE DEVELOPMENT, LLC*

*v.*

*CITY OF NATCHEZ, MISSISSIPPI AND THE*
*MAYOR & BOARD OF ALDERMEN OF THE*
*CITY OF NATCHEZ, MISSISSIPPI*

## ON WRIT OF CERTIORARI

| | |
|---|---|
| DATE OF JUDGMENT: | 01/14/2010 |
| TRIAL JUDGE: | HON. FORREST A. JOHNSON, JR. |
| COURT FROM WHICH APPEALED: | ADAMS COUNTY CIRCUIT COURT |
| ATTORNEYS FOR APPELLANT: | MICHAEL V. CORY, JR. |
| | DALE DANKS, JR. |
| ATTORNEY FOR APPELLEES: | EVERETT T. SANDERS |
| NATURE OF THE CASE: | CIVIL - OTHER |
| DISPOSITION: | AFFIRMED - 01/17/2013 |
| MOTION FOR REHEARING FILED: | |
| MANDATE ISSUED: | |

**EN BANC.**

**WALLER, CHIEF JUSTICE, FOR THE COURT:**

¶1.     Roundstone Development, LLC, sought to develop an affordable-housing subdivision in the City of Natchez. The land on which it sought to do so had two different zoning classifications: O-L (Open-Land) and R-1 (Single-Family Residential). The City's Planning Commission denied Roundstone's site plan; it found that the O-L area must be rezoned R-1 before the development could be approved. The Mayor and Board of Alderman then denied Roundstone's rezoning request. The Circuit Court of Adams County and the Court of

Appeals both affirmed the City's decision. We granted certiorari to address: (1) whether the City erred in requiring that the O-L area be rezoned R-1 and (2) whether the City erred in failing to grant Roundstone's rezoning request. We find that the City's interpretation of its zoning ordinance to require rezoning from O-L to R-1 was not manifestly unreasonable and that it did not act arbitrarily or capriciously in denying the rezoning. Therefore, we affirm the judgments of the circuit court and the Court of Appeals.

## FACTS & PROCEDURAL HISTORY

¶2. Roundstone sought to develop a subdivision called Audubon Terrace in Natchez, Mississippi. The development was to consist of sixty-five single-family homes. It was to be financed, in part, through a tax-credit program with the Mississippi Home Corporation (MHC). MHC requires that all homes built with tax credits be high-quality homes. The subdivision provided a lease-purchase plan by which the homes would be leased for fifteen years. At the end of the fifteen-year period, the residents would have the option to buy the homes at a discounted price.

¶3. The site where Roundstone sought to build the subdivision was zoned O-L (Open-Land) and R-1 (Single-Family Residential). O-L districts are of open character.

¶4. Roundstone claims that it received and relied upon three letters prior to purchasing the site. On February 10, 2006, Andrew L. Smith, Planning Director, wrote a letter to David Strange of the Neighborhood Development Alliance, LLC. Strange, according to Roundstone, previously had worked on the Audubon Terrace development. The record indicates that Strange had owned the land before Roundstone purchased it. The letter stated:

The [Audubon Terrace] project is zoned R-1 (Single Family) Residential District according to the Official Zoning Map of the City of Natchez. The use of the property as single-family development is a permitted use under the sites [sic] R-1 zoning classification.

Any new construction must be in accordance with the respective subdivision regulations and building codes of the City. . . .

On December 21, 2006, Dennis E. Story, Director of Planning and Zoning, wrote another letter to Strange. That letter stated:

The referenced property (at the terminus of Lafayette Street in Concorde Addition Subdivision) is zoned "R-1" (Single-Family) Residential District, according to the Official Zoning Map of the City of Natchez. The use of the property for a single-family development is a permitted use under the R-1 zoning classification. . . .

And finally, on May 16, 2007, Walter Huston, Land Use Planner, wrote a letter to "Mr. Phillips" of the SunAmerica Housing Fund, LP, which was Roundstone's lender. It stated similarly:

Please be advised that: (i) the [Audubon Terrace project] is zoned R-1. (Single-Family Residential District) which zoning allows single-family use as a matter of right and is within the city limits of Natchez, Mississippi, (ii) the Project is not located within an overlay zone district (such as, for example a PUD or an historical district), and (iii) there are no violations of zoning law, or non-conforming uses and the Project is in compliance with all applicable zoning and subdivision laws, ordinances and regulations (including without limitation, all those establishing or relating to parking requirements). Further, there are no requirements which must be satisfied in order for the Project to fully comply with applicable zoning and subdivision laws, ordinances, regulations and parking requirements. . . .

These three letters, it turned out, were incorrect about the land's zoning status.[1]

---

[1] The Court of Appeals' opinion stated: "Roundstone claims the letters were provided to it and its lenders, but none of the letters were addressed to Roundstone. The record does not show what relationship, if any, Roundstone had with the recipients of the letters." *Roundstone Dev., LLC v. City of Natchez*, __ So. 3d ___, 2011 WL 5547805, at *1 (Miss.

¶5.    Roundstone completed its Site Plan Review Application on August 14, 2007, and its Subdivision Application on September 9, 2007. Both applications noted that the property was currently zoned R-1 and O-L.

¶6.    The City's Site Plan Review Committee approved the site plan and subdivision plat on September 12, 2007. But, on September 20, 2007, the City's Planning Commission declined to approve the site plan and subdivision plat. Instead, the Planning Commission tabled the site plan until the property was rezoned from O-L to R-1 and a traffic study was completed.

¶7.    Roundstone submitted an application to the Planning Commission to rezone the property. The Planning Commission denied the rezoning request, and Roundstone appealed to the Mayor and Board of Aldermen.

¶8.    The Board considered Roundstone's zoning request on February 16, 2008. Roundstone's attorney and a MHC representative spoke at the hearing. Following their presentations, concerned citizens were allowed to speak. A majority of those citizens opposed the development. Ultimately, the Board voted unanimously to affirm the Commission's decision.

---

Ct. App. Nov. 15, 2011). In its petition for writ of certiorari, Roundstone asserts that the Court of Appeals' opinion conflicts with the facts and trivializes the importance of these three letters. The record is clear, Roundstone says, that the May 16, 2007, letter was to Roundstone's lender and that the two other letters were to Strange, who previously had worked on the development.

We disagree with Roundstone's characterization of the Court of Appeals' opinion on this point. The Court of Appeals was correct that none of the letters was addressed to Roundstone itself. Moreover, it is clear that Roundstone knew of the property's partial O-L designation when it filed its site-plan review and subdivision-development applications.

4

¶9. Roundstone appealed the Board's decision to the Circuit Court of Adams County. The circuit court affirmed the decision of the Board, finding that it "was fairly debatable and supported by substantial evidence and was neither arbitrary nor capricious."

¶10. The Court of Appeals affirmed the circuit court's judgment in a seven-two decision. *Roundstone Dev., LLC v. City of Natchez*, __ So. 3d ___, 2011 WL 5547805 (Miss. Ct. App. Nov. 15, 2011). We granted certiorari to address the propriety of the City's denial of Roundstone's site plan and rezoning request.

## DISCUSSION

### I. The City's interpretation of its zoning ordinance to require rezoning from O-L to R-1 was not manifestly unreasonable.

¶11. Roundstone argues that the approval of a site plan is ministerial in nature: The plan must be approved if all requirements are met. Roundstone insists that its plan met the City's zoning requirements because single-family homes are permitted uses in O-L zones; therefore, the City had no grounds to deny approval and require rezoning.

¶12. Even if site-plan approval is ministerial in nature, as Roundstone contends, approval is not required unless the site plan complies with the zoning ordinance. The City found that Roundstone's site plan did not. The City interpreted its ordinance to require that O-L districts be reclassified before being subdivided into urban building sites for single-family homes. And, as the Court of Appeals stated, "[t]he language of the ordinance is . . . flexible enough to accommodate the City's interpretation." *Roundstone Dev., LLC*, 2011 WL 5547805, at *3.

5

¶13.    On one hand, Roundstone is correct that single-family dwellings are a permitted use in O-L districts. Yet, at the same time, the O-L ordinance also could be interpreted as requiring that those districts be reclassified. It states that:

> [O-L] districts are composed mainly of unsubdivided lands that are vacant or in agricultural or forestry uses, with some dwellings and some accessory uses. The regulations are designed to protect the essentially open character of the districts by prohibiting the establishment of scattered uses that are unrelated to any general plan of development and that might inhibit the best future urban utilization of the land. It is intended that land in these districts will be reclassified to its appropriate residential, commercial, and industrial category in accordance with the amendment procedure set forth herein whenever such land is subdivided into urban building sites.

City of Natchez Zoning Ordinance and Subdivision Regulations § IV(1).

¶14.    A plausible interpretation of the O-L ordinance is that reclassification could be required prior to the land being subdivided. First, the last sentence states that reclassification is intended whenever an O-L district is subdivided into an urban building site. *Id.* It does not state that reclassification is required per se, but it provides that reclassification is intended. Further, the phrase "whenever such land is subdivided" is ambiguous: It could mean that reclassification should occur after the land has been subdivided, as Roundstone asserts, but it also could mean prior to or shortly before any subdivision. Second, the ordinance states that "[t]he regulations [of O-L districts] are designed to protect the essentially open character of the districts by prohibiting the establishment of scattered uses that are unrelated to any general plan of development and that might inhibit the best future urban utilization of the land." *Id.* By requiring reclassification before a large project, the City is able to ensure that the proposed use fits within the City's general plan of development and that it would not inhibit the best future urban utilization of the land.

6

¶15.    Local authorities' construction of zoning ordinances is given great weight unless their construction is manifestly unreasonable. *Hall v. City of Ridgeland*, 37 So. 3d 25, 40 (Miss. 2010) (quoting *Columbus & Greenville Ry. Co. v. Scales*, 578 So. 2d 275, 279 (Miss. 1991)). We cannot say that the City's interpretation of the ordinance here was manifestly unreasonable. And, under that interpretation, Roundstone's site plan failed to meet the zoning requirements. The City's decision to deny the site plan and require rezoning, therefore, was not improper.

II.     **The City's decision to deny Roundstone's rezoning request was not arbitrary, capricious, discriminatory, illegal, or without a substantial basis.**

¶16.    Zoning issues are legislative in nature. *Thomas v. Bd. of Supervisors of Panola County*, 45 So. 3d 1173, 1180 (Miss. 2010) (citing *Luter v. Hammon*, 529 So. 2d 625, 628 (Miss. 1988)). Zoning decisions by boards of supervisors will "'not be set aside unless [they are] clearly shown to be arbitrary, capricious, discriminatory, or [are] illegal, or without a substantial evidentiary basis.'" *Thomas*, 45 So. 3d at 1180 (quoting *Faircloth v. Lyles*, 592 So. 2d 941, 943 (Miss. 1991)). Their decisions will not be disturbed if the issue is "fairly debatable." *Thomas*, 45 So. 3d at 1181 (citing *Childs v. Hancock County Bd. of Supervisors*, 1 So. 3d 855, 859 (Miss. 2009)).

¶17.    To reclassify property, the party seeking reclassification must show, by clear and convincing evidence, either "that (1) a mistake in the original zoning occurred; or (2) a change in the character of the neighborhood occurred that justified rezoning, and a public need existed for the rezoning." *Thomas*, 45 So. 3d at 1181 (citation omitted). Changes must be made after careful consideration because investments in land and property are significant

7

financial decisions, and a landowner should be able to rely upon a zoning plan to maintain the use and value of his property. *See Town of Florence v. Sea Lands, Ltd.*, 759 So. 2d 1221, 1228-29 (Miss. 2000).

¶18.   Roundstone argues that the Court of Appeals, in addressing this particular issue, added a new step to the traditional zoning analysis. The Court of Appeals noted that the ordinance amendment procedure stated that the ordinance could be amended only under certain conditions. *Roundstone Dev., LLC*, 2011 WL 5547805, at *4. One of those conditions was that "[t]he subdivision or imminent subdivision of open land into urban building sites makes reclassification *necessary and desirable*." *Id.* (quoting City of Natchez Zoning Ordinance and Subdivision Regulations § XV(1) (emphasis added). Based on that language, the Court of Appeals stated that "[t]he only question under the ordinance was whether reclassification was 'necessary and desirable.'" *Roundstone Dev., LLC*, 2011 WL 5547805, at *4.  "That phrase," the court added, "confers substantial discretion on the Board to reject or deny an application to reclassify O-L areas." *Id.*

¶19.   We agree with Roundstone that a necessary-and-desirable analysis is not proper. A traditional analysis — whether there was a prior mistake or whether there has been a change in the character of the neighborhood combined with public need — is proper, even under these facts.

¶20.   There is no contention in this case that there was a mistake in the original zoning. The sole issue, rather, is whether the character of the neighborhood had changed to such an extent as to justify reclassification from O-L to R-1, and whether a public need for rezoning existed.

8

¶21. Here, the Board determined effectively that no change had occurred in the character of the neighborhood and that there was no public need for rezoning. The minutes of the Board meeting showed three concerns that were raised by Board members and local citizens: (1) environmental concerns that the land had been contaminated by a chemical spill in prior years, (2) traffic congestion, and (3) the high density of rental houses in the area, which would have a negative impact on the use and enjoyment of surrounding properties. Roundstone asserts that it countered the first two concerns. It addressed the environmental concerns by hiring a private company to perform environmental tests. Those tests, Roundstone stated, did not raise substantial concerns about the safety of the land, apart from the presence of old railway ties that had been treated with toxic creosote. Additionally, the City's engineers had performed a traffic study which, according to Roundstone, showed that the development would have no material effect on traffic congestion. As to the third concern, Roundstone contends that worries about the development's impact on surrounding properties was attributable to class and/or racial animus.

¶22. In determining the factual issues before it, the Board was not bound by the results of the environmental test or the traffic study. Rather, it was free "to consider the statements expressed by all the landowners at the hearing, as well as to call upon their own common knowledge and experience in their town." ***Bd. of Aldermen of Town of Bay Springs v. Jenkins***, 423 So. 2d 1323, 1327 (Miss. 1982). This Court has said that such considerations are "sound and practical" and should be respected unless the findings are arbitrary, capricious, and unreasonable. ***Id.***

¶23. Here, the Board used its common knowledge and familiarity with its municipality in reaching its decision. It heard from many citizens who strongly opposed the development. Furthermore, the traffic study itself did not necessarily dispel concerns about congestion. The study considered two possible ingress/egress scenarios. The first option "would increase traffic on Old Washington Road to an average daily count from 1317 vehicles to 1937 vehicles per day." That option was not recommended. The second option distributed traffic to multiple streets. Old Washington Road would go from 1,317 to 1,627 vehicles per day, and Kelly Avenue from 1,518 to 1,673; also, traffic on Oriole Terrace would increase by 310 vehicles per day. The study then concluded that "[t]hese streets are comparable to other similar arterial and collector streets such as Ratcliff with 1100 average cars per day, Auburn Ave[.]with 3500 average cars per day, and Miller Ave[.] with 1900 average cars per day." The significance of the traffic increases under either option is debatable, however. Even a slight increase in traffic could be significant, depending upon the circumstances surrounding that particular street or area. One Board member, for example, said that "only one car can travel at a time" on Old Washington Road. Further, Roundstone acknowledged at the hearing that some individuals had disputed the accuracy of the traffic study on the basis that the traffic counters had not been placed in the right locations.

¶24. Like the Court of Appeals, we are unpersuaded that racial and/or class animus played a role in the Board's decision. Roundstone has not offered any proof that the Board's decision was discriminatory or motivated by class, race, or any other animus.

¶25. We find that the Board's decision was not arbitrary, capricious, discriminatory, illegal, or without a substantial basis.

CONCLUSION

¶26.    We find that the City's interpretation of its zoning ordinance was not manifestly unreasonable and that its decision to deny Roundstone's rezoning request was not arbitrary, capricious, discriminatory, illegal, or without a substantial basis. Therefore, we affirm the judgments of the Circuit Court of Adams County and the Court of Appeals.

¶27.    **AFFIRMED.**

**RANDOLPH, P.J., LAMAR, KITCHENS, PIERCE AND KING, JJ., CONCUR. CHANDLER, J., DISSENTS WITH SEPARATE WRITTEN OPINION JOINED BY DICKINSON, P.J.  COLEMAN, J., NOT PARTICIPATING.**

**CHANDLER, JUSTICE, DISSENTING:**

¶28.    I do not agree with the majority's analysis.  Therefore,  I respectfully dissent.  The Court of Appeals' dissent correctly focused on the denial of the site-plan application and found it unnecessary to decide the zoning issue.  In likening the present case to ***Vineyard Investments, LLC v. City of Madison***, 999 So. 2d 438, 442 (Miss. Ct. App. 2009), the Court of Appeals' dissent opined that the approval of the site plan and subdivision plat is a ministerial act, as opposed to the quasilegislative decisions of rezoning applications.  Thus, because Roundstone had met all zoning and building requirements, the denial of approval of the site plan and subdivision plat by the Board was an abuse of its discretion.  ***Roundstone Dev., LLC v. City of Natchez***, __ So. 3d ___, 2011 WL 5547805, at *9 (Miss. Ct. App. 2011).  Concluding that the denial of the rezoning did not impact the approval of the submitted site plan and subdivision plat, the dissent found the denial of the application to be dispositive.  I agree with this sound reasoning set forth by Judge Carlton in her dissent.

11

¶29.   This Court has declared that consideration of building-permit applications is a ministerial decision that must be approved if all requirements are met. *See Thompson v. Mayfield*, 204 So. 2d 878, 880 (Miss. 1967) (holding that "the issuance of [building permits] was purely ministerial and did not involve the exercise of discretion on the part of the City Council, since all of the requirements of existing building codes and zoning ordinances had been met"); *Vineyard*, 999 So. 2d at 440-41 (holding that the City did not have discretion to deny site building permit until a retailer's permit could be obtained, since building permit approval is a ministerial task). Further, in *Berry v. Embrey*, 120 So. 2d 165, 167 (1960), this Court recognized that "building and zoning regulations are distinct from each other" and concluded that a building permit that conformed with the building regulations could not be denied for a proposed use if the area is not zoned against such use. *See Vineyard*, 999 So. 2d at 440.

¶30.   Today we are faced with a different issue, because this case concerns site-plan approval. In *Hillside Terrace, L.P., v. City of Gulfport*, 18 So. 3d 339, 345 (Miss. Ct. App. 2009), the Court of Appeals affirmed the City of Gulfport's decision to deny site-plan approval to a land developer. In that case, the developer was seeking site-plan approval "to construct a multi-family housing development utilizing low-income housing tax credits" in a B-2 zone. *Id.* at 341. Gulfport's Comprehensive Zoning Ordinance allowed multi-family housing to be built in B-2 zones upon approval by the Planning Commission. *Id.* at 342. Despite the land developer meeting the requirements of the ordinance, Gulfport refused to grant the site-plan application due to possible drainage issues since part of the subdivision's location was in a flood zone. *Id.* at 342-43. Additionally, Gulfport considered testimony that

12

the low-income housing would result in "'an atmosphere for the cultivation of crime'" and the need for increased fire and police protection. *Id.* at 343-44. The Court of Appeals upheld the denial of the site-plan application and concluded that the Commission's decision was not arbitrary or capricious because the Commission and Council could consider their own common knowledge when deciding a municipal order. *Id.* at 343-344.

¶31. Meanwhile, in *Old Canton Hills Homeowners Association v. Mayor and City Council of the City of Jackson*, 749 So. 2d 54, 56 (Miss. 1999), this Court considered a zoning case in which site-plan approval of a planned unit development was "contingent upon the completion of twenty-three requirements." *Id*. at 56. The Jackson City Council initially conducted a public hearing at which the application was unanimously approved, and the decision was affirmed by the Hinds County Circuit Court. *Id*. On appeal, this Court noted that such conditions were the standard practice for planned-unit developments. *Id*. at 59. Moreover, the Court mentioned that planned-unit developments are "subject to restrictions" by their very nature. *Id*. This Court ultimately affirmed the city council's decision to rezone the property, stating that the decision was not arbitrary, capricious, or fairly debatable. *Id*. at 63.

¶32. The site-plan approvals in *Hillside* and *Old Canton Hills* are distinguishable from the present case. *Hillside* involved an ordinance that was not "Permitted Use by Right," but instead was "Permitted Upon Approval." In other words, the ordinance explicitly provided for discretion. But here, the ordinance provides for no such discretion, but rather permits single-family households as matter of right. Similarly, *Old Canton Hills* involved a particular type of development (planned-unit development) that normally requires that certain

13

conditions are satisfied, unlike the subdivision development that is the subject of the present case.

¶33.    I would find that, where the applicable ordinance provides no discretion, site-plan and subdivision-plat approvals are ministerial functions akin to approval of building permits. Building permits and site plans are governed by detailed ordinances. Similar to the improper denial of a building permit in *Vineyard*, the City of Natchez's refusal to approve Roundstone's site-plan and subdivision-plat application until the land could be rezoned constituted an arbitrary, capricious decision beyond the ministerial nature of site-plan approval.

¶34.    The majority finds that this would deprive local authorities of their right to interpret zoning ordinances. While I understand the majority's concern with preserving local authorities' discretion, the consequences of the present case are not far-reaching. Today we are faced with a unique situation, in which O-L zones and R-1 zones are virtually interchangeable, making it unnecessary for the City to rezone. I also disagree with the majority's finding that the ordinance on O-L districts was ambiguous. The ordinance states that "[i]t is intended that land in [O-L] districts *will be* reclassified to its appropriate residential, commercial, and industrial category . . . *whenever* such land is *subdivided* into urban building sites." City of Natchez Zoning Ordinance and Subdivision Regulations IV(1) (emphasis added). While the majority claims that districts can be reclassified before subdivision, the language in the ordinance makes it clear that rezoning will happen *after* the land is subdivided. Subdivision into urban building sites is regulated by the "Use by Right" language provided in the City's zoning chart. The chart *specifically* allows R-1 zones and

14

O-L zones "Use by Right" for single-family dwellings. Therefore, since the land has been subdivided, the City must reclassify the O-L land to R-1.

¶35.    Furthermore, the zoning issue need not be resolved, because the approval of the site plan and subdivision plat is dispositive of the case. The City's letter from May 16, 2007, acknowledged that there were no zoning violations. In addition, staff for the Commission specifically stated that Roundstone had satisfied all site-plan recommendations and requirements. Because approval of the site plan does not require rezoning, and because the current zoning permits single-family households as a matter of right, the proposed site plan complies with existing zoning and building ordinances. Thus, no rezoning is necessary.

¶36.    I would find that, in this case, the site-plan and subdivision-plat approval is a ministerial task. The City of Natchez arbitrarily and capriciously denied the site-plan and subdivision-plat approval without a legally valid reason. Therefore, I would reverse the decision of the Court of Appeals and the trial court and remand this case to the circuit court.

**DICKINSON, P.J., JOINS THIS OPINION**.