GRIFFIS, P.J.,
for the Court:
¶ 1. This case concerns a zoning dispute. Roundstone Development, LLC applied to re-zone a parcel of real property in Natchez, Mississippi, from O-L (open land) to R-l (single-family residential) to develop a residential subdivision on the property. The Natchez mayor and Board of Aider-men (“Board”) denied Roundstone’s request to re-zone the property. On appeal, the Adams County Circuit Court affirmed the decision of the City of Natchez (“City”). On appeal to this Court, Round-stone argues that: (1) the City improperly required the property be re-zoned as a prerequisite for the development to go forward; (2) the City’s denial of the request to re-zone the property was arbitrary and capricious, discriminatory, illegal, and unsupported by substantial evidence; (3) the City’s denial of the request to re-zone the property violated the Fair Housing Act; and (4) the circuit court erred when it denied Roundstone’s motions to strike the City’s brief and for a judgment on the pleadings. We find no error and affirm the judgment of the circuit court.
FACTS
¶ 2. Roundstone acquired title to a tract of land in Natchez, Mississippi, with the intent to build a subdivision containing sixty-five homes on the property. The development was to be named the Audubon Terrace Subdivision. The 1,700 square-foot homes were to have three bedrooms and two bathrooms. The subdivision was *344 to include a swimming pool, business center, fitness center, and community center.
¶ 3. The development was to be subsidized by a federal tax-credit program administered by the Mississippi Home Corporation. In return for the tax credit, Roundstone would be required to rent the homes to qualifying applicants for a period of fifteen years. To qualify, an applicant would have to have an income below a certain level. It was estimated that rent would be between $375 and $425 per month. After fifteen years, the renter would have the option to buy the home at a discounted price, estimated at a purchase price of approximately $65,000.
¶4. The record contains three letters from city officials that Roundstone claims it relied on when it decided to purchase the property. Roundstone claims the letters were provided to it and its lenders, but none of the letters were addressed to Roundstone. The record does not show what relationship, if any, Roundstone had with the recipients of the letters.
¶ 5. On February 10, 2006, Andrew L. Smith, Planning Director, wrote a letter to David Strange, with Neighborhood Development Alliance, LLC, as follows:
Re: Zoning Verification
Neighborhood Development Alliance, LLC
Audubon Terrace Subdivision, Phase I Dear Mr. Strange,
The above referenced project is zoned R-l (Single Family) Residential District according to the Official Zoning Map of the City of Natchez. The use of the property as single-family development is a permitted use under the sites R-l zoning classification.
Any new construction must be in accordance with the respective subdivision regulations and building codes of the City.
[[Image here]]
¶ 6. On December 21, 2006, Dennis E. Story, Director of Planning and Zoning, wrote a letter to Strange that tracks verbatim the February 10th letter.
¶ 7. On May 16, 2007, Walter Huston, Land Use Planner, wrote a letter to Mr. Phillips[1], with the SunAmerica Housing Fund, LP, which states:
Re: Audubon Terrace, Natchez, Mississippi (“the Project”)
Please be advised that: (i) the Project is zoned R-l (Single-Family Residential District) which zoning allows single-family use as a matter of right and is within the city limits of Natchez, Mississippi ... and (iii) there are no violations of zoning law, or non-conforming uses and the Project is in compliance with all applicable zoning and subdivision laws, ordinances and regulations.... Further, there are no other requirements which must be satisfied in order for the Project to fully comply with applicable zoning and subdivision laws, ordinances, regulations^] and parking requirements.
[[Image here]]
¶ 8. The letters were incorrect about the zoning status of the land. Approximately nine acres of the land were zoned R-l. The remaining seventeen acres were zoned OL. The City’s ordinance defines O-L zones, stating:
[O-L] districts are composed mainly of unsubdivided lands that are vacant or in agricultural or forestry uses, with some dwellings and some accessory uses. The regulations are designed to protect the essentially open character of the districts by prohibiting the establishment of scattered uses that are unrelated to *345 any general plan of development and that might inhibit the best future urban utilization of the land. It is intended that land in these districts will be reclassified to its appropriate residential, commercial, and industrial category in accordance with the amendment procedure set forth herein whenever such land is subdivided into urban building sites.
City of Natchez Zoning Ordinance and Subdivision Regulations § IV(1) (emphasis added). The ordinance defines R-l zones as follows:
These districts are composed mainly of areas containing one-family dwellings and open areas where similar residential development seems likely to occur; few two-family and multiple-family dwellings are found in these areas. The district regulations are designed to protect the residential character of the areas by prohibiting all commercial and industrial activities, to encourage a suitable neighborhood environment for family life by including among the permitted uses such facilities as schools and churches[,] and to preserve the openness of the areas by requiring certain minimum yard and area standards to be met.
City of Natchez Zoning Ordinance and Subdivision Regulations § IV(2). The ordinance provides that “Dwelling, one-family” is a “Use by Right” in both O-L and R-l zones.
¶ 9. Roundstone sought approval for its site plan and subdivision plat from the Natchez Planning Commission (“Commission”). The Commission decided that before it could approve the site plan and subdivision, the O-L area had to be rezoned to R-l. Roundstone then submitted an application to the Commission to rezone the property. The Commission voted to deny the request to re-zone. Round-stone then appealed the Commission’s decision to the Board.
¶ 10. On February 16, 2008, at its regularly scheduled meeting, the Board considered the zoning issue. Roundstone’s attorney presented argument in favor of the request to re-zone. Those same arguments are renewed on appeal, so we will discuss them below. Next, a representative of the Mississippi Home Corporation explained the tax-credit program. Then, concerned citizens were allowed to speak, the majority of whom were opposed to the development. A motion was made to “affirm the ... Commission’s decision and deny the development.” The motion carried unanimously.
¶ 11. Roundstone filed a bill of exceptions with the circuit court. The circuit court affirmed the Board’s decision. Roundstone appealed to the Mississippi Supreme Court, which deflected the appeal to this Court for review.
STANDARD OF REVIEW
¶ 12. When the decision of a local zoning authority is appealed to the circuit court, the court acts as an appellate court. Broadacres, Inc. v. City of Hattiesburg, 489 So.2d 501, 503 (Miss.1986). This Court and the circuit court, in an appellate capacity, must apply the same standard of review. City of Biloxi v. Hilbert, 597 So.2d 1276, 1280 (Miss.1992). We can reverse the zoning authority’s decision only if that decision was “arbitrary, capricious, discriminatory, illegal, or not supported by substantial evidence.” Id. Indeed, if the zoning authority’s decision appears “fairly debatable,” the decision must be affirmed. Id.
ANALYSIS

1. Whether the City improperly required that the property be re-zoned as a prerequisite for the development to go forward.

¶ 13. Roundstone argues the development was in compliance with the or *346 dinance and that the City’s decision to require re-zoning was arbitrary and capricious. Roundstone points out that single-family dwellings are permitted uses in both R-l and O-L zones. Roundstone contends that because its subdivision was to contain single-family dwellings, no rezoning was necessary.
¶ 14. The ordinance states: “It is intended that land in [O-L] districts will be reclassified to its appropriate residential, commercial, and industrial category ... whenever such land is subdivided into urban building sites.” City of Natchez Zoning Ordinance and Subdivision Regulations § IV(1). Neither party disputes that Roundstone’s residential subdivision required “subdivision into urban building sites.”
¶ 15. There may ■ be a question as to whether the ordinance required that O-L districts be reclassified before they can be subdivided into urban building sites. Perhaps, the ordinance might be read to mean that the land should be reclassified after it is subdivided. In addition, the ordinance does not state that reclassification is required. Rather, the ordinance merely states that there must be an intent to reclassify whenever the land is subdivided.
¶ 16. “In construing a zoning ordinance, unless manifestly unreasonable, great weight should be given to the construction placed upon the words by the local authorities.” Hall v. City of Ridgeland, 37 So.3d 25, 40 (¶ 50) (Miss.2010) (quoting Columbus & Greenville Ry. Co. v. Scales, 578 So.2d 275, 279 (Miss.1991)). Here, the City decided the ordinance did, in fact, require O-L districts to be reclassified before they could be subdivided into urban building sites. The language of the ordinance is indeed flexible enough to accommodate the City’s interpretation. The City’s interpretation is consistent with the following provision of the ordinance: “The regulations [of O-L districts] are designed to protect the essentially open character of the districts by prohibiting the establishment of scattered uses that are unrelated to any general plan of development and that might inhibit the best future urban utilization of the land.” City of Natchez Zoning Ordinance and Subdivision Regulations § IV(1). By requiring a developer to seek reclassification before he can undertake a large project in an O-L district, the City reserves the authority to make sure that the proposed use fits within the City’s larger, long-term goals.
¶ 17. We find that the City’s interpretation of the ordinance was not manifestly unreasonable. Therefore, the City did not act arbitrarily or capriciously when it required Roundstone to re-zone the property. This issue is without merit.

2. Whether the Board’s denial of Roundstone’s request to re-zone the property was arbitrary and capricious.

¶ 18. Next, Roundstone contends that its request to re-zone the property should have been approved. Roundstone argues that the City’s denial of the request was arbitrary and capricious.
¶ 19. Ordinarily, the proponent of a request to re-zone property would be required to show, by clear and convincing evidence, “either[:] (1) ... a mistake in the original zoning, or (2) that the character of the neighborhood has changed to such an extent as to justify reclassification, and there was a public need for rezoning.” Adams v. Mayor and Bd. of Aldermen of Natchez, 964 So.2d 629, 633-34 (¶ 12) (Miss.Ct.App.2007) (citation and quotation omitted).
¶ 20. Here, because of the unusual nature of the O-L zone, we are faced with a *347 different analysis. The ordinance’s amendment procedure provides in part:
It is ... declared to be the public policy to amend this ordinance only when one or more of the following conditions prevail:
a. Error. There is a manifest error in the ordinance;
b. Change in conditions. Change or changing conditions in a particular area, or in the metropolitan -area generally, make a change in the ordinance necessary and desirable;
[[Image here]]
d. Subdivision of land. The subdivision or imminent subdivision of open land into urban building sites makes reclassification necessary and desirable.
City of Natchez Zoning Ordinance and Subdivision Regulations § XV(1). Thus, as the ordinance provides, the reclassification of O-L areas, when there is an imminent subdivision of those areas into urban building sites, is different from the usual mistake or change-in-character re-zoning.
¶ 21. Neither party disputes that there was an “imminent subdivision of open land,” as Roundstone had applied for subdivision approval. The only question under the ordinance was whether reclassification was “necessary and desirable.” That phrase confers substantial discretion on the Board to reject or deny an application to reclassify O-L areas.
¶ 22. The law prohibits a zoning authority from applying its ordinance in an arbitrary and capricious manner. Briarwood, Inc. v. City of Clarksdale, 766 So.2d 73, 80 (¶ 25) (Miss.Ct.App.2000). Those terms are defined as follows:
Arbitrary, as defined by our supreme court, refers to an act done not according to reason or judgment, but which is solely dependent upon the will alone. It has defined capricious “as any act done without reason, in a whimsical manner, implying either a lack of understanding of or a disregard for the surrounding facts and settled controlling principles.”
Id. at (¶26) (quoting Burks v. Amite County Sch. Dist., 708 So.2d 1366, 1370 (¶ 14) (Miss.1998)). The party challenging the zoning authority’s decision bears the burden of proving that the decision was arbitrary and capricious. Id. at (¶ 25).
¶ 23. Here, the Board decided that, under the ordinance, the reclassification of the O-L area at issue was not necessary and desirable. Upon our review of the minutes of the Board meeting held on February 16, 2008, we find that the Board’s decision was not arbitrary and capricious.
¶ 24. There were three distinct issues raised at the meeting. Concerned citizens and some Board members stated that the land had been contaminated by a chemical spill some years prior, and this might present health hazards to the future occupants of the subdivision. Some Board members also expressed concerns that the development would cause traffic congestion. Also, surrounding property owners expressed concerns that a large, densely populated cluster of rental houses would have a negative impact on their use and enjoyment of their properties.
¶ 25. Roundstone responded to the environmental concern by stating that it had hired a private company to perform some environmental tests. Those tests did not raise substantial concerns about the safety of the land, aside from the presence of some old railroad ties that had been treated with creosote, which is toxic. In response to the traffic-congestion concern, Roundstone pointed out that city engineers had performed a traffic study. The study opined that the development would not *348 pose a significant traffic problem. As to the impact on surrounding properties, Roundstone argues the concerns about the development’s impact on surrounding properties were motivated by class and/or racial animus.
¶ 26. The Board was not bound by the results of the environmental tests or the traffic study. The Mississippi Supreme Court has stated:
[T]he Mayor and Board of Alderman were authorized to consider the statements expressed by all the landowners at the hearing, as well as to call upon their own common knowledge and experience in their town. It is manifest that the Mayor and Board took into consideration all statements, both sworn and un-sworn, and their common knowledge and familiarity about their small community, in reaching their decision. We believe this method to be sound and practical, and courts should respect such findings unless they are arbitrary, capricious, and unreasonable.
City of Jackson v. Aldridge, 487 So.2d 1345, 1347 (Miss.1986) (quoting Board of Aldermen of Bay Springs v. Jenkins, 423 So.2d 1323, 1327-28 (Miss.1982)). As such, the Board was authorized to use its common knowledge about the community.
¶27. In Hillside Terrace, LB ex rel. Hillside Terrace I LLC. v. City of Gulfport, 18 So.3d 339, 343 (¶¶ 10-12) (Miss.Ct.App.2009), this Court affirmed the zoning authority’s decision to deny a permit to construct an apartment complex on a parcel of property. The zoning authority’s decision was based, in part, on a concern that the property was prone to flooding. Id. On appeal, the landowner argued that the zoning authority lacked the expertise to base its decision on what was essentially an engineering issue. Id. This Court disagreed, stating the city officials were authorized to use their common knowledge about the community. Id. Likewise, here, we find the Board was authorized to use its common knowledge when considering potential traffic and environmental problems with the proposed development.
¶ 28. Furthermore, this Court is not persuaded that racial and/or class animus played a role in the Board’s decision. Roundstone offers no proof to support its assertion that the Board had such a discriminatory motive. Indeed, Roundstone seems to imply that because the Board’s decision blocked the construction of low-income housing, a presumption of an improper motive is raised. The Board’s decision is presumptively valid. Briarwood, Inc., 766 So.2d at 80 (¶ 25). To prevail before this Court, Roundstone bears the burden to prove the Board’s decision was arbitrary and capricious. In the absence of such evidence, we cannot conclude that the Board’s decision was based on improper considerations of class and/or race.
¶ 29. As the Mississippi Supreme Court has stated, an appellate court “will not substitute [its] judgment as to the wisdom or soundness of the municipality’s action.” Aldridge, 487 So.2d at 1347. When the zoning authority’s decision appears “fairly debatable,” the decision must be affirmed. Id. (citing Killegrew v. City of Gulfport, 293 So.2d 21, 22 (Miss.1974); Currie v. Ryan, 243 So.2d 48, 51-52 (Miss.1970)).
¶ 30. After a careful review of the record, we conclude that the Board did not act arbitrarily and capriciously when it denied Roundstone’s request to re-zone the property. Accordingly, this issue lacks merit.

3. Whether the City’s denial of the request to re-zone the property violated the Fair Housing Act.

¶ 31. Roundstone next argues the City violated the Fair Housing Act (“Act”). *349 Roundstone contends the City discriminated against the future tenants of the subdivision on the basis of class and/or race in violation of the Act.
¶ 32. Ordinarily, a claim under the Act is litigated in a trial court. See Homebuilders Ass’n of Miss., Inc. v. City of Brandon, 640 F.Supp.2d 835, 836-37 (S.D.Miss.2009). At trial, evidence would be presented, and on appeal, the appellate court would have an adequate record to review. See Woods-Drake v. Lundy, 667 F.2d 1198, 1199 (5th Cir.1982). This case is an appeal from the Board’s decision to deny a re-zoning request. We have no testimony or exhibits to examine, and we have no rulings from a trial court or verdicts from a jury on the issues that arise in a claim under the Act. We are of the opinion that an appeal from the Board is not an appropriate forum to assert a claim under the Act.
¶ 33. Further, the Act is a complicated federal statute. See 42 U.S.C. §§ 3601-3619 (2006). Yet Roundstone’s brief devotes a mere five sentences to this issue. The only authority cited is the statute itself, and it is cited only by its common name. The “argument” is simply a conclu-sory assertion that the City had an improper motive.
¶ 34. Mississippi Rule of Appellate Procedure 28(a)(6) provides: “The argument shall contain the contentions of the appellant ... and the reasons for those contentions, with citations to the authorities, statutes, and parts of the record relied on.” (Emphasis added). It is not enough to make a mere assertion and a reference to some authority. This Court has no obligation to develop an appellant’s argument. Simply stated, we will not act as an advocate for one party to an appeal. When the appellant fails to make a meaningful argument on an issue, the issue is considered waived. Randolph v. State, 852 So.2d 547, 558 (¶ 30) (Miss.2002). Based on Round-stone’s non-compliance with Mississippi Rule of Appellate Procedure 28(a)(6), he has waived his issue by failing to present a meaningful argument.

U. Whether the circuit court erred when it denied Roundstone’s motions to strike the City’s brief and for a judgment on the pleadings.

¶35. Roundstone contends that the circuit court should have stricken the City’s appellate brief and entered a judgment on the pleadings because the City did not file its brief with the circuit court within the time frame established by the rules.
¶ 36. Uniform Rule of Circuit and County Court 5.06 provides in part: “Briefs filed in an appeal on the record must conform to the practice in the Supreme Court, including ... time of filing. ... The consequences of failure to timely file a brief will be the same as in the Supreme Court.” Mississippi Rule of Appellate Procedure 31(b) provides in part: “The appellee shall serve and file the appellee’s brief within 30 days after service of the brief of the appellant.” Rule 31(d) provides in part: “If an appellee fails to file the appellee’s brief as required, such brief, if later filed, may be stricken from the record on motion of appellant[.]”
¶ 37. The record shows that Round-stone filed and served its brief on January 28, 2009. Therefore, the City’s brief was due on or about March 2, 2009. The City did not file its brief by that date. Instead, on March 13, 2009, the City filed a motion for enlargement of time, requesting an extension until April 2, 2009. The circuit court never ruled on the motion. By June 17, 2009, the City still had not filed its brief, so Roundstone filed a motion for a judgment on the pleadings. Before a ruling was obtained on that motion, on June *350 25, 2009, the City filed another motion for enlargement of time, requesting an extension until July 15, 2009. The circuit court granted the City’s motion by order dated June 29, 2009. The City filed another motion for enlargement of time on July 15, 2009, requesting an extension until July 22, 2009. The circuit court never ruled on the motion. Finally, on July 24, 2009, the City filed its brief.
¶ 38. Roundstone filed a motion to strike the City’s brief. A motion hearing was held on August 3, 2009. The circuit court denied the motion, stating:
[T]he City on this appeal could have been more diligent in filing its brief. It has now been filed.... This is a matter where the court does have a great deal of discretion. The law does favor deciding matters on the merits without deciding them on procedural deficiencies. That being said, however, there are situations where clearly enough is enough.... The court is going to allow the appeal to proceed as a matter of discretion.
The rules do, indeed, give appellate courts discretion on this issue. Rule 31(d) states that the appellee’s brief may be stricken if untimely filed. We cannot find error in the circuit court’s decision. The circuit court properly exercised its discretion. Accordingly, this issue is without merit.
¶ 39. THE JUDGMENT OF THE CIRCUIT COURT OF ADAMS COUNTY IS AFFIRMED. ALL COSTS OF THIS APPEAL ARE ASSESSED TO THE APPELLANT.
LEE, C.J., MYERS, BARNES, ISHEE, ROBERTS AND MAXWELL, JJ., CONCUR. CARLTON, J., DISSENTS WITH SEPARATE WRITTEN OPINION JOINED BY RUSSELL, J. IRVING, P.J., NOT PARTICIPATING.

. Mr. Phillips’s first name is not indicated in the record.