CHANDLER, Justice,
dissenting:
¶ 28. I do not agree with the majority’s analysis. Therefore, I respectfully dissent. The Court of Appeals’ dissent correctly focused on the denial of the site-plan application and found it unnecessary to decide the zoning issue. In likening the present case to Vineyard Investments, LLC v. City of Madison, 999 So.2d 438, 442 (Miss.Ct.App.2009), the Court of Appeals’ dissent opined that the approval of the site plan and subdivision plat is a ministerial act, as opposed to the quasilegislative decisions of rezoning applications. Thus, because Roundstone had met all zoning and building requirements, the denial of approval of the site plan and subdivision plat by the Board was an abuse of its discretion. Roundstone Dev., LLC v. City of Natchez, 105 So.3d 342, 351-52 (Miss.Ct.App.2011). Concluding that the denial of the rezoning did not impact the approval of the submitted site plan and subdivision plat, the dissent found the denial of the application to be dispositive. I agree with this sound reasoning set forth by Judge Carlton in her dissent.
¶ 29. This Court has declared that consideration of building-permit applications is a ministerial decision that must be approved if all requirements are met. See Thompson v. Mayfield, 204 So.2d 878, 880 (Miss.1967) (holding that “the issuance of [building permits] was purely ministerial and did not involve the exercise of discretion on the part of the City Council, since all of the requirements of existing building codes and zoning ordinances had been met”); Vineyard, 999 So.2d at 440-41 (holding that the City did not have discretion to deny site building permit until a retailer’s permit could be obtained, since *324 building permit approval is a ministerial task). Further, in Berry v. Embrey, 238 Miss. 819, 120 So.2d 165, 167 (1960), this Court recognized that “building and zoning regulations are distinct from each other” and concluded that a building permit that conformed with the building regulations could not be denied for a proposed use if the area is not zoned against such use. See Vineyard, 999 So.2d at 440.
¶ 30. Today we are faced with a different issue, because this case concerns site-plan approval. In Hillside Terrace, L.P., v. City of Gulfport, 18 So.3d 339, 345 (Miss.Ct.App.2009), the Court of Appeals affirmed the City of Gulfport’s decision to deny site-plan approval to a land developer. In that case, the developer was seeking site-plan approval “to construct a mul-ti-family housing development utilizing low-income housing tax credits” in a B-2 zone. Id. at 341. Gulfport’s Comprehensive Zoning Ordinance allowed multi-family housing to be built in B-2 zones upon approval by the Planning Commission. Id. at 342. Despite the land developer meeting the requirements of the ordinance, Gulfport refused to grant the site-plan application due to possible drainage issues since part of the subdivision’s location was in a flood zone. Id. at 342-43. Additionally, Gulfport considered testimony that the low-income housing would result in “ ‘an atmosphere for the cultivation of crime’ ” and the need for increased fire and police protection. Id. at 343-44. The Court of Appeals upheld the denial of the site-plan application and concluded that the Commission’s decision was not arbitrary or capricious because the Commission and Council could consider their own common knowledge when deciding a municipal order. Id. at 343-344.
¶ 31. Meanwhile, in Old Canton Hills Homeowners Association v. Mayor and City Council of the City of Jackson, 749 So.2d 54, 56 (Miss.1999), this Court considered a zoning case in which site-plan approval of a planned unit development was “contingent upon the completion of twenty-three requirements.” Id. at 56. The Jackson City Council initially conducted a public hearing at which the application was unanimously approved, and the decision was affirmed by the Hinds County Circuit Court. Id. On appeal, this Court noted that such conditions were the standard practice for planned-unit developments. Id. at 59. Moreover, the Court mentioned that planned-unit developments are “subject to restrictions” by their very nature. Id. This Court ultimately affirmed the city council’s decision to rezone the property, stating that the decision was not arbitrary, capricious, or fairly debatable. Id. at 63.
¶ 32. The site-plan approvals in Hillside and Old Canton Hills are distinguishable from the present case. Hillside involved an ordinance that was not “Permitted Use by Right,” but instead was “Permitted Upon Approval.” In other words, the ordinance explicitly provided for discretion. But here, the ordinance provides for no such discretion, but rather permits single-family households as matter of right. Similarly, Old Canton Hills involved a particular type of development (planned-unit development) that normally requires that certain conditions are satisfied, unlike the subdivision development that is the subject of the present case.
¶ 33. I would find that, where the applicable ordinance provides no discretion, site-plan and subdivision-plat approvals are ministerial functions akin to approval of building permits. Building permits and site plans are governed by detailed ordinances. Similar to the improper denial of a building permit in Vineyard, the City of Natchez’s refusal to approve Roundstone’s site-plan and subdivision-plat application until the land could be rezoned constituted *325 an arbitrary, capricious decision beyond the ministerial nature of site-plan approval.
¶ 34. The majority finds that this would deprive local authorities of their right to interpret zoning ordinances. While I understand the majority’s concern with preserving local authorities’ discretion, the consequences of the present case are not far-reaching. Today we are faced with a unique situation, in which O-L zones and R-l zones are virtually interchangeable, making it unnecessary for the City to rezone. I also disagree with the majority’s finding that the ordinance on O-L districts was ambiguous. The ordinance states that “[i]t is intended that land in [O-L] districts will be reclassified to its appropriate residential, commercial, and industrial category ... whenever such land is subdivided into urban building sites.” City of Natchez Zoning Ordinance and Subdivision Regulations IV(1) (emphasis added). While the majority claims that districts can be reclassified before subdivision, the language in the ordinance makes it clear that rezoning will happen after the land is subdivided. Subdivision into urban building sites is regulated by the “Use by Right” language provided in the City’s zoning chart. The chart specifically allows R-l zones and O-L zones “Use by Right” for single-family dwellings. Therefore, since the land has been subdivided, the City must reclassify the O-L land to R-l.
¶ 35. Furthermore, the zoning issue need not be resolved, because the approval of the site plan and subdivision plat is dispositive of the case. The City’s letter from May 16, 2007, acknowledged that there were no zoning violations. In addition, staff for the Commission specifically stated that Roundstone had satisfied all site-plan recommendations and requirements. Because approval of the site plan does not require rezoning, and because the current zoning permits single-family households as a matter of right, the proposed site plan complies with existing zoning and building ordinances. Thus, no rezoning is necessary.
¶ 36. I would find that, in this case, the site-plan and subdivision-plat approval is a ministerial task. The City of Natchez arbitrarily and capriciously denied the site-plan and subdivision-plat approval without a legally valid reason. Therefore, I would reverse the decision of the Court of Appeals and the trial court and remand this case to the circuit court.
DICKINSON, P.J., JOINS THIS OPINION.