# IN THE SUPREME COURT OF MISSISSIPPI

## NO. 2024-CA-01249-SCT

*ELLIOTT LAND DEVELOPMENTS LLC,*
*MICHAEL AGUZIN, AND WINONA AGUZIN*

*v.*

*BOARD OF SUPERVISORS OF JACKSON*
*COUNTY, MISSISSIPPI, AND MARISA LAMEY*

| | |
|---|---|
| DATE OF JUDGMENT: | 10/08/2024 |
| TRIAL JUDGE: | HON. CALVIN D. TAYLOR |
| TRIAL COURT ATTORNEYS: | CHRISTIAN JANE'T STRICKLAND |
| | ROBERT THOMAS SCHWARTZ |
| | ANNA JULIET RICHARDSON |
| | JAMES H. COLMER, JR. |
| COURT FROM WHICH APPEALED: | JACKSON COUNTY CIRCUIT COURT |
| ATTORNEYS FOR APPELLANTS: | ROBERT THOMAS SCHWARTZ |
| | CARLEE VICTORIA DYMOND |
| | CHRISTIAN JANE'T STRICKLAND |
| ATTORNEYS FOR APPELLEES: | JAMES H. COLMER, JR. |
| | MARISA LAMEY (PRO SE) |
| NATURE OF THE CASE: | CIVIL - REAL PROPERTY |
| DISPOSITION: | AFFIRMED - 10/30/2025 |
| MOTION FOR REHEARING FILED: | |

**BEFORE COLEMAN, P.J., MAXWELL AND ISHEE, JJ.**

**COLEMAN, PRESIDING JUSTICE, FOR THE COURT:**

¶1. The current appeal stems from the Jackson County Circuit Court's affirmance of the Jackson County Board of Supervisors' denial of Elliott Land Developments LLC's application to rezone a property in order to develop a subdivision.

¶2. Elliott Land appealed and argues (1) that the Board of Supervisors lacked subject-matter jurisdiction; (2) that Elliott Land met its burden to show there was a change in the

character of the neighborhood and that a public need existed to rezone; and (3) that the Board of Supervisors' denial was arbitrary and capricious.

¶3. We conclude that (1) the appeal was properly before the Board of Supervisors; (2) whether Elliott Land met its burden was a fairly debatable issue based on the substantial evidence presented by each side; and (3) the Board of Supervisors' denial of the rezoning application was not arbitrary or capricious. Thus, the circuit court did not err by affirming the Board of Supervisors' decision to deny Elliott Land's application to rezone the property. Accordingly, we affirm the circuit court's judgment.

**FACTS**

¶4. On November 14, 2023, Elliott Land submitted an application to rezone Michael and Winona Aguzin's property, consisting of approximately 31.777 acres, from an A-1 general agriculture development to a R-1 single-family residential development.

¶5. On December 20, 2023, the Jackson County Planning Commission conducted a hearing to determine whether it should recommend that the Board of Supervisors grant or deny Elliott Land's application. At the hearing, the Planning Commission heard testimony from six residents adjacent to the property who opposed the rezoning. The residents conceded that there had been a change in the area but not enough to warrant rezoning, and they expressed concern that the new development would negatively impact water drainage and traffic on the surrounding roads. Residents also stated that they enjoyed the country setting and relied on the zoning ordinance when deciding to purchase a home in that area. Two residents noted that the property owners had attempted to rezone the property three

times the previous year without success, and the residents argued that nothing had changed since the three previous attempts.

¶6. Also at the hearing, Donovan Scruggs, a professional planning consultant, spoke on behalf of Elliott Land regarding the change in the character of the neighborhood, citing a Land Use Report that he had prepared. The Land Use Report included a map of the established zoning districts, which showed that the property is surrounded by R-1 single-family residential developments, R-4 higher-density residential developments, *i.e.*, apartments and townhouses, and A-1 general-agricultural and A-2 agricultural-reserve zones. It noted that some of the lots had been recently rezoned from agricultural to residential, supporting Elliott Land's argument that there had been a change in the character of the neighborhood.

¶7. Further, the Land Use Report included Google Earth images showing the development that occurred over the last twenty years, including the addition of approximately 160 homes to the immediate area in the three years prior. Additionally, it indicated that the improved water and sewer infrastructure showed a change in the character of the neighborhood. It also indicated that the installation of wastewater lines eliminated the need for septic tanks on the property, which diminished the need for homes to sit on larger lots.

¶8. The Land Use Report cited several public needs that Scruggs claimed supported the rezoning, including enhanced access to places of employment and more affordable housing, and Scruggs argued that the completion of new roads encouraged and anticipated growth in the area. Scruggs asserted that rezoning to allow for smaller R-1 lots would increase

flexibility for buyers to reduce the costs of a home, to buy a bigger home, or to add more amenities. Further, the report included data demonstrating an influx of new homes constructed in the area since 2010 responsible for approximately half of the new homes constructed in Jackson County over the past ten years.

¶9. Using the Land Use Report, Elliott Land also contended that the rezoning would be consistent with the County's Comprehensive Plan because (1) the property is close in proximity to D'Iberville, Biloxi, and Ocean Springs, as well as the Mississippi Gulf Coast Community College and the University of Southern Mississippi campuses; (2) the property includes a large amount of developable land; (3) it has easy access to Interstate 10 and Highway 90; and (4) the area has improved utility services. The report noted, however, that some of the land is wetlands that Elliott Lands would have to conserve.

¶10. At the hearing's conclusion, the Planning Commission recommended approving Elliott Land's application by a four-to-one vote.

¶11. Adjacent property owner Marisa Lamey appealed the Planning Commission's decision to the Board of Supervisors that same day. The notice of appeal stated, "Please use this letter as our written appeal regarding RZON-11-2023-00169" and included her name, address, telephone number, and the cause number.

¶12. Lamey then submitted a second notice of appeal to the Board of Supervisors, adding reasons for contesting the Planning Commission's decision to approve the rezoning. Lamey's new notice of appeal stated that the adjacent property owners believed that "there is not a public need for additional homes on the property in question" since "[t]here are

4

numerous subdivisions south of McClelland that are not complete." The notice also provided that the adjacent neighbors wanted to keep the property A-1 for "agricultural purposes, low density growth, and the protection of wetlands and protected species."

¶13. On January 2, 2024, Elliott Land submitted a letter urging the Board of Supervisors to deny Lamey's appeal, arguing that the first notice of appeal was deficient because it failed to meet Jackson County Zoning Ordinance Section 9.19.02[1] in appealing a Planning Commission's decision. Specifically, Elliott Land claimed that the notice did not provide reasons why Lamey believed the Planning Commission committed an error nor did it provide any basis or explanation for the appeal. It argued that Lamey only submitted a sufficient notice after the deficiency was brought to the Board of Supervisors' attention. Elliott Land

---

[1] Section 9.19.02 of the Jackson County Zoning Ordinance provides:

a. **Notice of Appeal and Content of Notice**. Any person, aggrieved by a decision of the Planning Commission, may appeal such decision to the Jackson County Board of Supervisors by filing a notice of appeal with the Planning Director or his/her designee within seven (7) days after the decision is rendered. The notice of appeal shall be in writing and contain the following information:

    1)      the name, address, and telephone number of the party instituting the appeal;

    2)      the Planning Commission Number of the matter appealed;

    3)      a brief statement of each particular error which the appellant contends was committed by the Planning Commission. No error will be considered by the Board of Supervisors, which has not been distinctly set out in the notice, unless manifest injustice may occur otherwise.

maintained that the second notice of appeal also violated Section 9.19.02 because it was submitted more than seven days after the Planning Commission rendered its decision.

¶14. Notwithstanding its argument that the appeal was untimely, Elliott Land also contended that the Board of Supervisors should deny Lamey's appeal because (1) Lamey incorrectly claimed that nearby subdivisions were incomplete and thus available for development; (2) nearby sites had been recently rezoned based on a change in character of the neighborhood and public need; (3) at the Planning Commission's meeting, Lamey's husband admitted there was a change in the neighborhood's character; (4) R-1 is an appropriate designation for the property based on its size; (5) the rapid construction and purchasing of homes in the area demonstrated a public need for more housing. The Board of Supervisors opted to hear the appeal.

¶15. On February 20, 2024, the Board of Supervisors held a hearing to consider the rezoning application. Thirteen adjacent property owners spoke against rezoning. Many of them again claimed that they were concerned with water drainage and the capacity of the surrounding roads if the Board of Supervisors were to rezone. Again, several residents expressed their desire to maintain the "country feel" of the area. Several residents admitted the neighborhood had changed but claimed that such changes were unwanted and that there was not enough change to warrant rezoning. Many residents also argued that they were not claiming there was no need for additional housing, just that they would rather have homes situated on larger A-1 lots rather than homes built on R-1 lots that are situated closer together.

¶16.    At the Board of Supervisors hearing, Elliott Land also reiterated many previous arguments it had made before the Planning Commission using the Land Use Report.  It argued that the residents acknowledged there was a change in the neighborhood's character and a need for more homes, meaning the criteria for rezoning were met.  In addition to its previous arguments, Elliott Land noted that some people prefer smaller lots and want to be closer to their workplace and stores.  Elliott Land also claimed that it would not mitigate all of the property, noting that it would not cut down all trees and would either keep the wetlands in a conservation easement or cause them to remain wetlands, rendering them untouchable.

¶17.    At the end of the hearing, Supervisor Bosarge made a motion to overturn the Planning Commission's decision to grant Elliott Land's rezoning application "[b]ased on [the fact that he did not] believe there [was] enough change to warrant the zoning change."  Supervisor Ross expressed hesitation about joining the motion, stating that he wanted to control growth and preserve rural areas and questioning where to draw the line in rezoning.  However, he ultimately joined the motion to grant.  Supervisor Taylor was the only supervisor not to join the motion, providing that while he hated to disagree with the Board of Supervisors, he believed there was "ample reason" to grant Elliott Land's application to rezone.  Thus, the Board of Supervisors ultimately voted four-to-one to deny the application to rezone.  The order provided as follows:

> WHEREAS, on February 20, 2024, following lengthy and detailed presentations, discussions, and debate regarding the facts and circumstances surrounding the proposed zone change, listening to comments for and against the zone change, considering the submissions from the planning commission

7

as well as other submissions, and considering the standard requiring clear and convincing evidence that the character of the neighborhood has changed sufficient to justify rezoning and a public need exists for the rezoning, the Board of Supervisors determined there was not clear and convincing evidence presented that the character of the neighborhood has changed such to justify rezoning the property nor does the public need exist.

¶18. After the vote, Supervisor Bosarge informed Elliott Land that the current rezoning application was either the second or third before the Board of Supervisors for the property, and he requested that Elliott Land inform the Aguzins that "as long as [he is] Supervisor of that area, [he will] never support or vote for a zoning change."

¶19. Elliott Land timely appealed the Board of Supervisors' decision to the Circuit Court of Jackson County on February 27, 2024. Elliott Land requested the circuit court reverse the Board of Supervisors' decision to deny its application, claiming the denial was not founded in law or evidence but rather was based on Supervisor Bosarge's stance that he would never agree to rezoning the property. Elliott Land reiterated its arguments, claiming that it proved by clear and convincing evidence that there was a change in character of the neighborhood, that the influx of homes being built and sold evidenced a public need for more housing, and that many of the residents against the rezoning admitted as much.

¶20. It also claimed again that Lamey's notices of appeal were defective, depriving the Board of Supervisors of jurisdiction to hear the appeal. Also, it raised for the first time that Lamey failed to appear at the Planning Commission's hearing, divesting her of standing to appeal.

¶21. In response to Elliott Land's arguments, the Board of Supervisors argued to the circuit court that Elliott Land failed to cite legal authority for its proposition that the notice of appeal

8

was invalid, consequently depriving the Board of Supervisors of jurisdiction. It noted, nevertheless, that Section 9.19.92 of Jackson County's Zoning Ordinance gave the planning director, Marcus Catchot, discretion to dismiss an appeal if the notice failed to comply with the Section and that the planning director had elected not to dismiss Lamey's appeal. Further, citing Section 9.19.02(a), it claimed that Lamey was not required to speak at the Planning Commission hearing to appeal its decision.

¶22. The Board of Supervisors also reiterated the arguments of the thirteen residents who testified in opposition to the zone change before the Board of Supervisors. It noted that its decision was at least fairly debatable when considering that it heard substantial evidence presented by each side and because the Board of Supervisors and Planning Commission disagreed amongst themselves as to whether Elliott Land had met its burden. The Board of Supervisors also noted that even Elliott Land admitted it was not an easy decision, acknowledging that the numbers were not on its side when considering the opposing residents.

¶23. On October 8, 2024, the Jackson County Circuit Court affirmed the Board of Supervisors' decision, finding the decision was not arbitrary or capricious because, in its order, the Board of Supervisors had stated: (1) that Elliott Land "did not provide clear and convincing evidence that the area changed enough or that a public need existed to justify rezoning" and (2) that it "oppose[d] the rezoning to prevent a change in the surrounding country environment and potential drainage issues." The circuit court also found that the Board of Supervisors' denial was based on substantial evidence, specifically: (1) the

9

residents' testimony against the rezoning due to water "drainage issues and others[']
[concerns] with having small, 'cookie-cutter' lots" and (2) its consideration of "the character
of the surrounding area."

¶24.    Elliott Land appealed.

## STANDARD OF REVIEW

¶25.    In reviewing zoning cases, the circuit court acts as an appellate court, not as the trier
of fact. *Thomas v. Bd. of Supervisors of Panola Cnty.*, 45 So. 3d 1173, 1180 (¶ 20) (Miss.
2010).  The circuit court acts as the first-level appeals court, and our Court reviews "the same
record that was made at the agency whose decision is the subject of the appeal, and applies
the same review standard to it regardless of whether the circuit court affirmed or reversed
that decision." *Id.* (¶ 21) (quoting *Miss. Dep't of Corrs. v. Harris*, 831 So. 2d 1190, 1192
(Miss. Ct. App. 2002)).

¶26.    If the Board of Supervisors' decision is based on substantial evidence, then it is
binding on the circuit court and our Court. *Id.*  For "zoning decisions by boards of
supervisors, the order of the governing body will 'not be set aside unless it is clearly shown
to be arbitrary, capricious, discriminatory, or is illegal, or without a substantial evidentiary
basis.'" *Id.* (¶ 22) (citing *Faircloth v. Lyles*, 592 So. 2d 941, 943 (Miss. 1991)).

¶27.    "Arbitrary" is defined "as an act that 'is not done according to reason or judgment, but
depending on the will alone.'" *Id.* at 1181 (¶ 22) (internal quotation marks omitted) (quoting
*Gentry v. City of Baldwyn*, 821 So. 2d 870, 873 (Miss. Ct. App. 2002)).   Whereas
"'capricious' is defined as any act done without reason, in a whimsical manner, implying

10

either a lack of understanding of or a disregard for the surrounding facts and settled controlling principles." *Id.* (internal quotation marks omitted) (quoting *Gentry*, 821 So. 2d at 873). Substantial evidence means "'more than a mere scintilla of evidence' or 'something less than a preponderance of the evidence but more than a scintilla or glimmer.'" *Id.* (quoting *Miss. Dep't of Env't Quality v. Weems*, 653 So. 2d 266, 280-81 (Miss. 1995)).

¶28. The burden of proof on issues of "rezoning rests on the party asserting the invalidity of the board's actions, while the board's actions" are presumed valid. *Id.* (¶ 23) (citing *Childs v. Hancock Cnty. Bd. of Supervisors*, 1 So. 3d 855, 859 (Miss. 2009)). Our Court "cannot substitute its judgment for actions taken by the board." *Id.* (citing *Childs*, 1 So. 3d at 859). The zoning authority's actions "must not be disturbed where the issue is 'fairly debatable.'" *Id.* (citing *Childs*, 1 So. 3d at 859). When there is substantial evidence supporting each side of the zoning application, the zoning authority's ultimate decision is considered fairly debatable, rather than arbitrary or capricious, depriving our Court of the authority to overturn the zoning authority's decision. *Id.* A zoning case must be decided on all of the circumstances of that particular case. *Id.*

## DISCUSSION

**I.   Whether Lamey's notice of appeal to the Board of Supervisors was defective, depriving the Board of Supervisors of subject-matter jurisdiction.**

¶29. Elliott Land argues that Lamey's initial notice of appeal to the Board of Supervisors failed to state any grounds for her appeal, as Jackson County Zoning Ordinance Section

11

9.19.02(a)(3)[2] requires. Thus, it contends that the notice was defective, precluding the Board of Supervisors from having jurisdiction to hear the appeal.

¶30. The Board of Supervisors counters that Elliott Land did not provide any legal authority for its proposition that Lamey's notice of appeal was defective. It sets forth that, notwithstanding, the planning director has discretion to dismiss an appeal for failure to comply with the ordinance's requirements, and it chose not to dismiss the appeal.

¶31. We agree with the Board of Supervisors. Section 9.19.02 provides: "In the event an appellant disregards or fails to comply with the procedure set out in Section 9.19 of this article hereof, the Planning Director or his/her designee *may* by motion, request the Board of Supervisors dismiss the appellant's appeal." (Emphasis added.) If Catchot, as planning director, had believed Lamey's notice of appeal was deficient, he had discretion to file a motion requesting that the Board of Supervisors dismiss the appeal pursuant to Section 9.19.02. He chose not to. Thus, we conclude that the appeal was properly before the Board of Supervisors.

II. **Whether Elliott Land met its burden to warrant rezoning the property, and whether the Board of Supervisors' denial was arbitrary and capricious.**

¶32. To rezone a property, "an applicant seeking rezoning must prove by clear and convincing evidence either that (1) there was a mistake in the original zoning, or (2) the character of the neighborhood has changed to such an extent to justify rezoning and that a

---

[2]Section 9.19.02(a)(3) of the Jackson County Zoning Ordinance requires "a brief statement of each particular error which the appellant contends was committed by the Planning Commission. No error will be considered by the Board of Supervisors, which has not been distinctly set out in the notice, unless manifest injustice may occur otherwise."

public need exists to rezone." ***Childs***, 1 So. 3d at 859-60 (¶ 13) (internal quotation mark omitted) (quoting ***Bridge v. Mayor & Bd. of Aldermen of Oxford***, 995 So. 2d 81, 83 (Miss. 2008)).

¶33. In determining whether to rezone, a Board of Supervisors may consider "the statements expressed by all the landowners at the hearing, [and may] call upon their own common knowledge and experience in their town." ***Roundstone Dev., LLC v. City of Natchez***, 105 So. 3d 317, 322 (¶ 22) (Miss. 2013) (internal quotation mark omitted) (quoting ***Bd. of Aldermen of Bay Springs v. Jenkins***, 423 So. 2d 1323, 1327 (Miss. 1982)). Our Court has found "that such considerations are 'sound and practical' and should be respected unless the findings are arbitrary, capricious, and unreasonable." ***Id.*** (quoting ***Jenkins***, 423 So. 2d at 1327).

¶34. Elliott Land argues that reversal is warranted because it met its burden by presenting clear and convincing evidence of both (1) a change in the character of the neighborhood and (2) a public need for the rezoning. As such, it claims the Board of Supervisors' denial of its application to rezone was not based on substantial evidence. Elliott Land asserts the denial was arbitrary and capricious by pointing to (1) Supervisor Bosarge's comment that he would not rezone that property "so long as [he is a] Supervisor"; (2) the objectors' admitting that there had been a change in the character of the neighborhood; and (3) the objectors' failure to present evidence on how the proposed development would affect the water drainage.

¶35. The Board of Supervisors counters that its decision was fairly debatable and supported by substantial evidence. It claims that the testimony it heard from the thirteen opposing

13

residents formed substantial evidence to deny the rezoning application. The Board of Supervisors also asserts that Supervisor Bosarge's comment that he would not rezone the property did not render its decision arbitrary or capricious because (1) it did not form the basis of the Board of Supervisors' decision; (2) it was based on his familiarity with his district; and (3) even if he had not participated in the vote, the zoning request would have still been denied as shown by its denial in a four-to-one vote.

¶36. We conclude that the issues of whether there has been a sufficient change in the character of the neighborhood and whether a public need exists to warrant rezoning are fairly debatable because both sides presented substantial evidence. *Thomas*, 45 So. 3d at 1181 (¶ 23).

¶37. On one hand, Elliott Land presented maps and statistics to the Board of Supervisors, which demonstrated the changes to the area. It included a map of the zoning districts, which showed that the property abuts R-1 single-family residential developments, R-4 higher-density residential developments (*i.e.*, apartments and townhouses), and A-1 general-agricultural and A-2 agricultural-reserve zones. Using Google Earth images, Elliott Land also demonstrated the development that has occurred over the last twenty years, including the addition of approximately 160 homes to the immediate area in the three years prior. It presented evidence of improved water and sewer infrastructure, eliminating the need for larger lots to accommodate septic tanks. It claimed that the area's proximity to jobs and shopping and the need for more affordable housing supported a public need to rezone. Such needs, Elliott Lands asserted, were also consistent with the county's comprehensive plan.

14

¶38. On the other hand, the Board of Supervisors properly relied on the thirteen residents who testified in opposition to the rezoning, expressing a desire to preserve the rural character of the area, raising concerns about water drainage and traffic on the nearby roads, and objecting to "cookie-cutter" homes. *Roundstone Dev.*, 105 So. 3d at 322 (¶ 22) (quoting *Jenkins*, 423 So. 2d at 1327). It also properly considered its own knowledge of the area and the fact that some residents relied on the existing zoning when they purchased their properties. *Id.*

¶39. Given that the Board of Supervisors' denial is presumed valid and because we conclude that each side presented substantial evidence supporting the grant or denial of the zoning application, our Court may not disturb the Board of Supervisors' denial of Elliott Land's zoning application, even if we would have come to a different conclusion based on the foregoing evidence. *Thomas*, 45 So. 3d at 1181 (¶ 23) (citing *Childs*, 1 So. 3d at 859).

¶40. Additionally, we conclude that Supervisor Bosarge's denial was not arbitrary because it was not based on his will alone, and his denial was not capricious because it was based on surrounding facts. *Id.* (¶ 22) (quoting *Gentry*, 821 So. 2d at 873). Indeed, Supervisor Bosarge heard the residents' testimony, considered his familiarity with and knowledge of his own district, and then made a motion to overturn the Planning Commission's decision based on the fact that he did not "believe there [was] enough change to warrant the zoning change." *See Roundstone Dev.*, 105 So. 3d at 322 (¶ 22).

¶41. Further, Supervisor Bosarge's comment did not render the Board of Supervisors' decision arbitrary or capricious since it did not inform the entire Board of Supervisors'

15

decision, and there are multiple possible motives for it. To be sure, the comment was made *after* the Board of Supervisors voted to deny Elliott Land's application, and the Board of Supervisors' decision was not unanimous; one Supervisor voted to grant the application.

## CONCLUSION

¶42. Because the circuit court correctly affirmed the Board of Supervisors' denial of Elliott Land's application to rezone the property, we affirm the circuit court's judgment.

¶43. **AFFIRMED.**

**RANDOLPH, C.J., KING, P.J., MAXWELL, CHAMBERLIN, ISHEE, GRIFFIS, SULLIVAN AND BRANNING, JJ., CONCUR.**